UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNDRA D., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:24-cv-01609-TLF <br><br> ORDER REVERSING AND REMANDING FOR ADDITIONAL PROCEEDINGS |

…

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

Plaintiff amended the alleged onset date to February 1, 2018. Because plaintiff was found to be disabled beginning November 4, 2021, the relevant period for this case is February 1, 2018 through November 3, 2021. AR 3306.

The ALJ found at step two that plaintiff had the following severe impairments: "Human Immunodeficiency Virus (HIV), right shoulder disorder, foot disorder, affective disorder, anxiety disorder; personality disorder, and substance use disorder." AR 3308.

As to the plaintiff's residual functional capacity (RFC), the ALJ determined plaintiff could perform light work, but with certain limitations: "could occasionally reach overhead," and "could occasionally balance, stoop, kneel, or crouch." AR 3311. The ALJ found plaintiff would need "to avoid concentrated exposure to vibration, respiratory irritants, hazards, or heights." *Id.* The plaintiff "could perform simple, routine, and repetitive tasks in a predictable work environment with minimal supervisor contact. The claimant could not perform cooperative tasks with coworkers and could not have more than incidental, superficial interaction with the general public." *Id.*

DISCUSSION

**1. Medical evidence concerning plaintiff's foot condition and shoulder condition, and whether plaintiff was limited to sedentary work.**

Plaintiff argues the medical evidence of his foot condition showed that he would only be capable of sedentary work during the relevant period. The defendant contends there is substantial evidence, citing AR 2293 and AR 3027, supporting the ALJ's decision denying benefits, because the medical records are inconsistent with plaintiff's claim that due to problems with his feet, he was limited to sedentary work. Dkt. 16 at 6. And the defendant cites AR 1104,1861, 2520, 2799, 2937, 2967, 2989, 3011, in response to plaintiff's contention that plaintiff's shoulder symptoms and limitations would limit him to only sedentary work. Dkt. 16 at 5-6.

The record contains scant support for plaintiff's assertions, or the defendant's arguments, about plaintiff's shoulder symptoms and limitations. For example, plaintiff's testimony during the hearing in April 23, 2018 was general, with no specifics about limitations – he stated that joints in his shoulders were worn, and "both shoulders jump out." AR 2520. Defendant cites a document from March 2011 (AR 1104), which is remote, seven years before the earliest date in the relevant period. Defendant's citation to AR 1861, notes from a 2015 routine medical visit, is also remote – this predates the relevant period by about three years. Defendant cites AR 2799, showing plaintiff presented at the Harborview Hospital emergency room in February 2021 requesting detox services; and defendant cites AR 2937 showing a Harborview ER evaluation in August 2018 for a headache. There is no discussion in these citations from 2018 or 2021 about plaintiff's shoulder impairment, or lack thereof.

The only record within the relevant period that included comments about plaintiff's shoulder is AR 2966-67, where it was noted in July 2019 that plaintiff did not have pain and had full range of motion in the shoulder.

Thus, substantial evidence supports the ALJ's decision regarding plaintiff's shoulder impairment (AR 3316). The minimal evidence of any shoulder impairment is reflected in the RFC, with a limitation that plaintiff "could occasionally reach overhead". AR 3311.

As to the limitations alleged by plaintiff concerning his foot, SSR 83-11 "light work" criteria of up to six-hours of standing or walking is for the "full range" of light work. *Id.; see, Acker v. Colvin,* No. 3:15-cv-1319, 2016 WL 6826165 (M.D. Penn., November 18, 2016) at *9-10. "Light work", according to 20 C.F.R. § 404.1567 (b), "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." According to SSR 83-10, for sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday. . . ." 1983 WL 31251, at *5. Under SSR 83-11, light work requires up to six hours of standing or walking in an eight-hour workday; light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

The medical record shows abnormalities, symptoms, and limitations, of plaintiff's lower extremities. He was diagnosed at Harborview Hospital on January 23, 2018 with soft tissue swelling in his knee and multiple bullet fragments in the lower thigh, as well as bunions, and healing fracture of second metatarsal head. AR 2303-04. On July 19, 2018 he was seen again at Harborview and diagnosed with hallux valgus, foot injury with abnormalities requiring treatment with a specialized boot. AR 2925-57, 2968. More

4

x-rays of plaintiff's feet were taken on August 23, 2018, and Dr. Chew noted hallux valgus.

Dr. Budak, who evaluated and treated plaintiff at Harborview Hospital starting in July 2021, stated that the medical chart notes showed that plaintiff had been experiencing symptoms and limitations from chronic bilateral shoulder pain, painful bilateral bunions, and avuncular necrosis of dorsal second metatarsal head of the right foot, since 2017. AR 3291-3292. Dr. Budak stated that plaintiff could stand or walk for less than two hours in an 8-hour workday. AR 3292.

The ALJ's decision states that Dr. Budak's opinion is inconsistent with the longitudinal evidence. AR 3320. The ALJ's decision describes Dr. Budak as only seeing plaintiff for an issue of facial cellulitis, in July 2021. AR 3321. Yet Dr. Budak states that he reviewed the medical chart notes, and that plaintiff's conditions have been documented since 2017. AR 3291-92. Dr. Budak was plaintiff's treating and examining physician; plaintiff filed their application[s] before March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The evidence cited by the defendant concerning plaintiff's foot condition, AR 2293 and AR 3027, are notes from a mental status exam, and notes from a nurse who

saw plaintiff briefly when plaintiff came to the emergency room requesting detox. These two notes include items where "normal" gait is noted, as part of routine status checks. This does not contradict Dr. Budak's opinion that plaintiff could stand or walk for less than two hours in an eight-hour workday. This is not a clear and convincing, or specific and legitimate, reason to reject Dr. Budak's assessment.

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The ALJ erred by rejecting Dr. Budak's opinion about the plaintiff's foot condition without giving clear and convincing reasons based on substantial evidence. Dr. Budak's assessment is consistent with the medical evidence of foot pain during the relevant period from Harborview Hospital. This error was not harmless; if Dr. Budak's opinion had been properly assessed, plaintiff may have been found disabled under the Medical-Vocational Guidelines grids. 20 C.F.R. 404 Appendix 2 to Subpart P, 201.00(g) 201.09.

Also, the ALJ did not follow the directions given by the Appeals Council. In relevant part, the Appeals Council ordered the ALJ on remand to "consider this evidence, with the assistance of a medical expert, if available". AR 3411. The ALJ's decision does not follow the directions given by the Appeals Council to consult with a medical expert about the evidence of foot condition symptoms and limitations based on

records that are relevant to the period at issue (February 2018-November 2021), and the ALJ failed to make any finding that a qualified medical expert was unavailable. AR 3316-17, 3321.

### 2. Medical evidence regarding mental health symptoms and limitations; other source evidence.

Plaintiff asserts the ALJ also erred in discounting the medical opinions of Dr. Bowes, Dr. Mulick, and Dr. Eisenhauer. Dkt. 12 at 7-13. *See,* opinions of Renee Eisenauer Ph.D. – Reviewing psychologist AR 3032-3035 (6-8-2021); Dr. Tasmyn Bowes, Psy. D. – Examining psychologist, AR 3043-61 (two reports, dated 8-10-2017 and 6-24-2019); Dr. Melissa Mulick, Psy.D., Examining psychologist, AR 3062-65 (5-27-2021, list of records reviewed, AR 3062).

As to all three of these medical providers, plaintiff asserts the ALJ erred by finding their opinions were inconsistent with the medical evidence, and that plaintiff sought only limited treatment for his mental health conditions. Plaintiff argues with respect to Dr. Bowes and Dr. Mulick, the ALJ erred by deciding that their opinions were internally inconsistent with the testing results. AR 3325.

The ALJ's findings as to Dr. Bowes' 2019 opinion, and the 2021 opinions of Dr. Mulick and Dr. Eisenhauer, are not supported by substantial evidence.

The "consistently normal mental status observations" finding by the ALJ is supported as to the August 2017 opinion of Dr. Bowes. In the previous opinion of the Court in 2020, the ALJ's decision was found to be supported by substantial evidence concerning this aspect of Dr. Bowes' 2017 opinion. AR 2437. The record shows assessments in 2017 documented plaintiff's major depressive disorder symptoms were

7

controlled without medication when he was evaluated by the Washington State Department of Corrections, before his release. AR 2080 (report of Dr. Humes dated 6-27-2017).

As to the ALJ's conclusion that each of the opinions were not credible because the opinions were internally inconsistent with "objective signs" documented during the examinations, the assessment of psychological and psychiatric conditions, symptoms, and limitations shown in the record of each of these medical experts is a combination of subjective and objective tests. The objective testing cannot be parsed out by an ALJ when they do not have the experience, training, or education of the clinical psychologist or psychiatrist that is examining or treating a patient. *See, Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (a physical condition such as a broken bone may be tested with diagnostic devices such as x-rays, but this is not the case with mental health symptoms and limitations). In Dr. Bowes' 2019 opinion, and the 2021 opinions of Dr. Mulick and Dr. Eisenhauer, some of the records indicated plaintiff was alert, cooperative, pleasant, and had normal mood, such evidence is not probative as to being punctual in showing up for work, or performing activities on a schedule, nor does plaintiff's ability to maintain a pleasant affect during a medical appointment mean he would be able to maintain appropriate behavior in a work setting, or complete a normal work day and work week without interruptions from psychologically based symptoms. These limitations were found to be "marked" by Dr. Bowes in June 2019 (AR 3050-53), and found to be "severe", along with severe limitations found in all other categories by Dr. Mulick and Dr. Eisenhauer in May and June 2021 (AR 3032-33, 3062-64). Although notations that plaintiff was cooperative, well-groomed, and pleasant, may suggest he

can interact with others, such notations are not substantial evidence of an internal inconsistency to undermine the testing results and objective findings analyzed in Dr. Bowes and Dr. Mulick's examinations and evaluations. The ALJ is "simply not qualified to interpret raw medical data in functional terms. . ." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ also discounted the opinions as inconsistent with plaintiff's course of treatment. A conservative course of treatment "can undermine allegations of debilitating pain" and other symptoms, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Seeking counseling as the mode of treatment, and not showing up for counseling appointments, is not necessarily inconsistent with having a severe mental illness, because a person with compromised mental health may not recognize their need for treatment. *See Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the record shows plaintiff, an individual of limited income who often lacked housing, engaged for a short time with mental health counseling from Sound Mental Health or Seattle Counseling.

Plaintiff sometimes attended counseling but was in and out of jail, was homeless or living in shelters, and had drug and alcohol use disorders co-existing with other mental health conditions. AR 2209 (homeless in July 2017 after release from prison; diagnosed with alcohol use disorder and cocaine use disorder, both indicated as being severe); AR 3072-93 (Seattle Counseling, plaintiff had poor attendance for counseling in December 2018); AR 3104, 3107, 3115 (Sound Mental Health, winter/spring 2019, plaintiff presents as well-groomed, cooperative, pleasant, continually homeless, poor

historian). The mental health evidence in the record is not inconsistent with the assessments of Dr. Bowes, Dr. Mulick, and Dr. Eisenhauer.

As to the opinion of Sandy Eastwood, R.N., dated 2-4-2021 (AR 3235) a nurse practitioner is not considered an acceptable medical source, under the regulations that apply to plaintiff's application. *See Popa v. Berryhill,* 872 F.3d 901, 907 (9th Cir. 2017). The ALJ may discount this opinion if the ALJ provides "reasons germane to each witness for doing so." *Id.* (citation omitted). The ALJ discounted Nurse Eastwood's assessment because she was plaintiff's treatment provider during his stays before and after incarceration at the Washington State Department of Corrections at a shelter, Bailey Boushay House; the treatment records associated with Bailey Boushay during the relevant period were spotty and outside the relevant period at issue for this application. AR 3321.

The ALJ's reasoning is supported by substantial evidence in the record. The ALJ is correct that there are no medical records from Bailey Boushay House for the relevant period; the Bailey Boushay medical records are in a date range of 2011 through 2012. AR 1292-1316. Although Nurse Eastwood's 2021 opinion is dated within the period that is at issue in this case, the record shows plaintiff stayed at the shelter in Bailey Boushay off and on in 2019. AR 3050, 3107. Nurse Eastwood states that the painful condition of his feet and problems with his memory – related to an HIV infection, would be limitations that prevent plaintiff's full-time employment; as of February 2021, she had been plaintiff's treatment provider for approximately 10 years total. AR 3235.

The previous medical records in the date range 2011 through 2012 show that Nurse Eastwood was a treatment provider for plaintiff at that time. Later he was incarcerated,

and homeless, so his would explain lack of treatment records for several years. Yet without any additional medical records from Bailey Boushay, the Court finds the ALJ's decision reasoning is germane and supported by substantial evidence.

**3. Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). It is up to the ALJ, not the Court, to determine the RFC. *Dominguez v. Colvin,* 808 F.3d 403, 409 (9th Cir. 2016)

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence. The Court is mindful that, in light of the existing finding that plaintiff was disabled as of November 4, 2021 a remand for further proceedings in this case would be of limited utility, as no new testimony or medical evaluations regarding plaintiff's condition during the period at issue would be forthcoming, and providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose". *Garrison*, 759 F.3d at 1021-22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

The Court has found legal error – there is not substantial evidence to support the ALJ's decision finding that Dr. Budak's opinion was inconsistent with the medical record as to plaintiff's foot condition; and the ALJ did not follow the instructions of the Appeals Council. *See generally, Dominguez v. Colvin,* 808 F.3d at 407-09 (even if the Court decides the ALJ harmfully erred, the credit-as-true analysis should not be conducted unless the Court first determines there are no outstanding issues that require resolution). As to the 2019 opinion of Dr. Bowes, and the 2021 opinions of Dr. Mulick and Dr. Eisenhauer, the Court has determined the ALJ erred in evaluating that evidence.

There is still ambiguity in the record. The ALJ would have discretion to determine whether plaintiff meets the standards for applying the grid and finding a limitation to sedentary work, because under SSR 83-11 "light work" criteria of up to six-hours of standing or walking is for the "full range" of light work. *Id.; see, Acker v. Colvin,* No.

3:15-cv-1319, 2016 WL 6826165 (M.D. Penn., November 18, 2016) at *9-10. And the evidence of plaintiff's mental health conditions during the period of late 2017 through 2021 shows his symptoms and limitations worsened during the relevant period, so the date of onset would need to be determined for the plaintiff's conditions, based on the evidence in the medical record. The Court may not remand for an award of benefits unless a remand for further administrative proceedings "would serve no useful purpose." *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014).

Potentially, a medical expert may be necessary in this situation where plaintiff did not maintain consistent attendance for counseling treatment during the relevant period. *Compare, Wellington v. Berryhill,* 878 F.3d 867, 874-76 (9th Cir. 2017) (ALJ may determine the date of onset without a medical advisor, even if symptoms wax and wane) *with, Diedrich v. Berryhill,* 874 F.3d 634, 638-39 (9th Cir. 2017) (ALJ erred by not consulting a medical advisor to determine the onset date, where the medical records have large gaps documenting a slow but progressive impairment, and the onset date would be speculative unless a medical expert aids the ALJ in the review and interpretation of the record).

Accordingly, remand for additional proceedings is the appropriate remedy.

## CONCLUSION

For those reasons, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for additional proceedings.

On remand, the ALJ is directed to: re-evaluate Dr. Budak's opinion regarding the plaintiff's foot condition symptoms and limitations and comply with the Appeals Council's

instructions that consulting a medical expert for analyzing the plaintiff's foot condition, unless such an expert is not available; review the 2019 opinion of Dr. Bowes, and the 2021 opinions of Dr. Mulick, and Dr. Eisenhauer under proper legal standards and assess whether a medical expert is necessary to determine the date of onset.

Dated this 21st day of October, 2025.

Theresa L. Fricke
United States Magistrate Judge

14